# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FORREST M. BAKER, SR.,** | Civil Action No. 15-1294 (RBK) |
| Petitioner, | |
| v. | OPINION |
| **STEPHEN D'ILIO, et al.,** | |
| Respondents. | |

**ROBERT B. KUGLER, United States District Judge:**

    Presently before this Court is the petition for a writ of habeas corpus of Forrest M. Baker, Sr. brought pursuant to 28 U.S.C. § 2254 challenging Mr. Baker's state court conviction. (ECF No. 1.) Following an order to answer, Respondents filed a response to the petition. (ECF No. 12.) Mr. Baker thereafter filed a letter formal reply, (ECF No. 18), and provided a handful of additional documents related to his state court proceedings. (ECF No. 15.)

    Mr. Baker seeks to have this Court overturn his state conviction based on his claim that the multiple transfers of him to and from the federal detention center where he was serving his federal sentence to attend court proceedings in his subsequent New Jersey state criminal matter violated the Interstate Agreement on Detainer Act's ("IAD's") mandates that "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State[,]" 18 U.S.C.App. 2 § 2, Art. IV(c), and that "[i]f trial is not had on any indictment, information, or complaint . . . prior to the prisoner's being returned to the original place of imprisonment . . . the court shall enter an order dismissing the same with prejudice." *Id.* at Art. IV(e). (*Accord* Pet'r's Pet. at Ground One ¶ 5, ECF No. 1.) For the following reasons, this Court will deny the petition and will deny Mr. Baker a certificate of appealability.

1

## I. BACKGROUND

From April 29, 2002 through October 30, 2002, Mr. Baker committed five separate bank robberies in southern New Jersey. (*See*, *e.g.*, ECF Nos. 12-7, 12-8.) During that period, on June 29, 2002, Mr. Baker and his then-thirteen-year-old son also robbed a Rite Aid store located in Mount Laurel, New Jersey. *See State v. Baker*, 945 A.2d 723, 725-27 (N.J. Super. Ct. App. Div. 2008).

On July 23, 2003, Mr. Baker pled guilty in United States District Court to five bank robbery charges. (*See* Criminal J., *United States v. Baker*, No. 1:03-cr-539 (RBK) (D.N.J. Nov. 25, 2003), appended to Resp'ts' Answer at ECF No. 12-7.) On November 25, 2003, this Court sentenced Mr. Baker to seventy-eight months of imprisonment. (*Id.*) On January 6, 2004, Mr. Baker began serving his federal sentence at the federal correctional facility at Fort Dix. *Baker*, 945 A.2d at 728.

Mr. Baker's plea in federal court did not, however, address the Rite Aid robbery he and his son committed on June 29, 2002; instead, that crime was prosecuted by the State of New Jersey. On June 5, 2003, Mr. Baker was charged in a two-count state indictment with: (i) robbery in the first degree and; (ii) using a juvenile to commit a crime in the first degree. *Id.* at 725. Mr. Baker entered a formal plea of "not guilty" to these charges in September 2005. (Resp'ts' Answer 7, ECF No. 12.)

Between July 1, 2003 and February 2, 2006, Judges Thomas S. Smith Jr. and Marvin E. Schlosser of the Superior Court of New Jersey collectively executed sixteen separate "Order[s] to Produce" by which the state trial court requested that Mr. Baker be produced from federal custody to attend various hearings and appear at trial; thirteen of these Orders to Produce were

2

executed prior to Mr. Baker pleading not guilty to his state charges in September 2005.[1] (ECF No. 12-11.) It also appears that many of those Orders to Produce were accompanied by separate Prosecutor's Certifications executed by the Burlington County Prosecutor requesting temporary custody of Mr. Baker pursuant to the Orders to Produce.[2] (*See* ECF No. 12-12.)

On or about August 12, 2005, Mr. Baker filed a pre-trial motion to dismiss the New Jersey indictment based on the argument, discussed in greater detail *infra*, that the Orders to Produce represented "detainers" which triggered application of the IAD and required dismissal of that indictment pursuant to the IAD's anti-shuttling provision. (ECF No. 12-5.) Mr. Baker's self-prepared certification in support of that argument universally refers to these Orders to Produce as "writs of habeas corpus *ad prosequendum*." (*Id.*) The trial court denied Mr. Baker's motion to dismiss during a hearing on October 14, 2005, and Mr. Baker's state criminal matter proceeded to trial. (Tr. 1T, 8:17-10:23, ECF No. 12-33.)

On January 31, 2006, after five days of trial, a jury returned a verdict of guilty against Mr. Baker on both counts charged in the indictment. (Tr. 7T, 125:6-16, ECF No. 12-39.) The trial court concluded proceedings on that date with the following exchange with the prosecutor:

> MR. MORMANDO: As to any detainer, Your Honor, I know he's in federal custody right now. Is there any specific detainer we need to lodge at this point in time or –
>
> THE COURT: Well, if he's – he goes back in federal custody, he's not going anywhere.
>
> MR. MORMANDO: All right. Thank you.

---

[1] It is unclear on how many occasions, and on which dates, Mr. Baker actually appeared before the state court pursuant to these pre-trial Orders to Produce. It is also unclear what transpired at each such hearing Mr. Baker attended prior to October 14, 2005. This specific information, however, has no bearing on the result reached by the Court in this Opinion.

[2] Respondents, regrettably, have made no effort to explain the import of these Certifications on Mr. Baker's current habeas petition.

3

> THE COURT: All right? Okay. Because he's – his bail is here. So, if they were going to release him, he'd still have to come back here anyway, all right?

(*Id.* at 129:9-19.)

At Mr. Baker's sentencing on February 17, 2006, "the trial judge imposed a mandatory life sentence without parole on the first-degree robbery [count], and a concurrent sentence of fifteen years, seven and one-half years without parole, on the second count." *Baker*, 945 A.2d at 725. Notably, Mr. Baker acknowledges that "[o]nly after [Mr. Baker's] sentencing did the State send the [federal] Bureau of Prisons an actual detainer letter." (Pet'r's Reply 23, ECF 17.)

### A. Mr. Baker's Direct Appeal to the State

Mr. Baker appealed his conviction and sentence, based on, *inter alia*, his assertion that his pre-trial motion to dismiss the State's indictment should have been granted in light of the State's alleged violations of IAD Article IV's anti-shuttling provision. *Baker*, 945 A.2d at 727. This appears to be the lone IAD-related argument which Mr. Baker presented on direct appeal. (*See* Pet'r's Mar. 5, 2007 Appeal Br. at Point I, ECF No. 12-16.)

On April 14, 2008, the Appellate Division affirmed Mr. Baker's conviction and sentence. *Baker*, 945 A.2d at 736. In so doing, the Appellate Division expressly found that the IAD was not implicated because "the State never filed a detainer with the federal correctional authorities." *Id.* at 730. That appellate court also found it "unnecessary" to remand Mr. Baker's case to the trial court "for a plenary hearing to determine exactly how he was produced from the federal facility for the several appearances he made before his trial commenced." *Id.* at 728.

The New Jersey Supreme Court granted certification in June 2008. (ECF No. 12-19.) On March 16, 2009, the New Jersey Supreme Court issued a written opinion affirming[3] Mr. Baker's

---

[3] It is unclear why the last sentence of the New Jersey Supreme Court's 2009 decision indicates that "the matter is remanded to the Law Division for further proceedings." *State v.*

4

conviction "substantially for the reasons expressed" in the written opinion of the Appellate Division. *State v. Baker*, 966 A.2d 488, 489 (N.J. 2009). The New Jersey Supreme Court then went on to add the following:

> On several occasions, the State procured the presence of [Mr. Baker] from federal custody (where [Mr. Baker] was serving a term of imprisonment) to appear in then-pending State criminal proceedings. The State never lodged a detainer against [Mr. Baker]. Instead, in each instance [Mr. Baker] was transferred between federal and New Jersey custody via a writ of habeas corpus *ad prosequendum* or an order to produce. . . . [A]lthough orders equivalent to an order to produce, such as writs of habeas corpus *ad prosequendum,* qualify as the required "written request for temporary custody [under IAD Art. 4(a)]," they do not constitute a detainer. *United States v. Mauro*, [436 U.S. 340, 360–61(1978)] ("[W]hen [Congress] used the word 'detainer,' it meant something quite different from a writ of habeas corpus *ad prosequendum* . . . . We therefore conclude that a writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the [IAD]."). Viewed thusly, it is clear that, in the circumstances presented, the two necessary conditions precedent to the invocation of the IAD never coalesced.
>
> [Mr. Baker] nevertheless asserts that the repeated use of orders to produce or writs of habeas corpus *ad prosequendum* subverts the purposes of the IAD and must, in the aggregate, trigger the provisions of the IAD. . . .
>
> . . . .
>
> [I]n order for the receiving state's[, *i.e.*, New Jersey's,] actions to trigger the IAD, Article IV(a) of the IAD . . . specifically requires both that a detainer be lodged *and* a written request for temporary custody be made by the receiving state. The absence of either element renders the IAD inapplicable. That was the case here. No doubt, the State made several written requests for [Mr. Baker's] temporary custody; thus, the second prong of Article IV(a) of the IAD obviously was satisfied. However, the absence of a detainer lodged by the State—the required first prong of Article IV(a) of the IAD, and one that cannot be satisfied by a writ commanding a prisoner's appearance—is fatal to [Mr. Baker's] efforts to invoke the IAD's protections.

*Id.* at 489-90.

---

*Baker*, 966 A.2d 488, 490 (N.J. 2009). Whatever the reason, it in no way appears that the matter was ever remanded, as confirmed by both Respondents' and Mr. Baker's habeas filings.

5

**Mr. Baker's Application for Post-Conviction Relief**

Mr. Baker continued to zealously pursue his IAD claims on his motion for post-conviction relief ("PCR") to the New Jersey Superior Court, and presented those arguments to, *inter alia*, the trial-level PCR court by way of a *pro se* brief dated December 11, 2009. (ECF No. 12-24.) On May 24, 2010, the PCR court held a hearing regarding Mr. Baker's wish to proceed *pro se* on his PCR application. (*See* Tr. 9T, ECF No. 12-41.)

Thereafter, on or about October 6, 2010, Mr. Baker – this time through counsel – filed an additional PCR application with the PCR court; that application does not independently advance any IAD-related arguments. (ECF No. 12-22.) Instead, the brief submitted by Mr. Baker's PCR counsel expressly notes that "[Mr. Baker] has previously submitted at least one *pro* se petition with supporting paperwork to the [c]ourt for consideration in this matter." (ECF No. 12-23 at Point IX.)

The PCR court held a hearing on the merits of Mr. Baker's PCR application on December 17, 2010. (*See* Tr. 10T, ECF No. 12-42.) On December 21, 2010, that court issued a letter opinion denying Mr. Baker's PCR application, (ECF No. 12-26), and on January 3, 2010, entered a formal order of denial. (ECF No. 12-28 at 173.) In so doing, the PCR court expressly held that Mr. Baker's IAD-related claims were procedurally barred. (ECF No. 12-26 at 21.) On January 16, 2013, the New Jersey Appellate Division affirmed the denial of Mr. Baker's PCR application; the Appellate Division did so without providing any analysis on Mr. Baker's IAD arguments. (ECF No. 12-31.) The New Jersey Supreme Court denied certification on Mr. Baker's PCR application on January 23, 2015. (ECF No. 12-32.)

Mr. Baker thereafter filed his current habeas petition in this Court on February 19, 2015. (ECF No. 1.) The sole argument advanced by Mr. Baker in support of his habeas petition is that

6

the State's violations of Article IV of the IAD mandates dismissal of his New Jersey indictment. (*See*, *e.g.*, Pet'r's Reply 4, ECF No. 17; *see also*, *generally*, ECF No. 1.)

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, ("AEDPA"), Pub. L 104-132, 110 Stat. 1214 (Apr. 24, 1996), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on

7

collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The AEDPA standard under § 2254(d) is a "difficult" one to meet; it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision. *See Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008).

**B. Analysis**

The Interstate Agreement on Detainers is an interstate compact entered into by 48 States (among them, New Jersey), the federal Government, and the District of Columbia. *See United States v. Hornick*, 491 F. App'x 277, 281 (3d Cir. 2012), *cert. denied*, 568 U.S. 1181 (2013) (citing 18 U.S.C.App. 2, § 2); *see also* N.J.S.A. § 2A:159A-1. The IAD creates uniform procedures for resolving one State's pending charges against an individual imprisoned by another State. *See Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *New York v. Hill*, 528 U.S. 110, 111 (2000); *Hornick*, 491 F. App'x at 281-82.

The IAD is also "a congressionally sanctioned interstate compact within the Compact Clause, U.S. CONST., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction."

8

*Carchman v. Nash*, 473 U.S. 716, 719 (1985).  "IAD violations are cognizable in federal habeas corpus because the IAD is a 'law of the United States' for purposes of 28 U.S.C. § 2254." *McCandless v. Vaughn*, 172 F.3d 255, 263 (3d Cir. 1999) (citing *Reed v. Farley*, 512 U.S. 339, 347 (1994)); *see also Pero v. Duffy*, 10-cv-3107 (JAP), 2013 WL 6579758, at *12-13 (D.N.J. Dec. 16, 2013) (same).

Article IV of the IAD gives "the jurisdiction in which an untried indictment, information, or complaint is pending" the right "to have a prisoner against whom" it "has lodged a detainer . . . made available" for trial.  18 U.S.C.App. 2, § 2, Art. IV(a).  If the state that lodged the detainer (the "receiving state") secures custody of the prisoner, that receiving state must, as a general matter, bring the prisoner to trial within 120 days.  *Id.* at Art. IV(c).  An "anti-shuttling provision" further requires the receiving state to retain custody of the prisoner until disposition of the charges.  *Id.* at Art. IV(e).  Absent a waiver, transfer of the prisoner back to the sending state results in dismissal, with prejudice, of the charges pending in the receiving state.  *Id.*; *see also Bozeman*, 533 U.S. at 156 (holding that the IAD commands dismissal of charges even for a one-day transgression of the anti-shuttling provision).

In this case, Mr. Baker claims that the State's multiple transfers of him to and from the federal detention center where he was serving his federal sentence to the state trial court to appear for court proceedings violated the IAD's mandates that "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State[,]" 18 U.S.C.App. 2 § 2, Art. IV(c), and that "[i]f trial is not had on any indictment, information, or complaint . . . prior to the prisoner's being returned to the original place of imprisonment . . . the court shall enter an order dismissing the same with prejudice."  *Id.* at IV(e).

More pointedly, Mr. Baker asserts that the State's "abuses of its [use of] writs [of habeas corpus *ad prosequendum*, *i.e.*, the state trial court's Orders to Produce]" triggered IAD Article IV's speedy trial and anti-shuttling provisions. (Pet'r's Pet. at Ground One ¶ 5, ECF No. 1.) Mr. Baker further asserts that even if these writs did not trigger the IAD protections he now seeks, there are also additional documents in the record before this Court which show that an IAD-triggering detainer was filed. (*See* Pet'r's Reply at 23, ECF No. 17.) Importantly, Mr. Baker, in his own submissions to this Court and to the state courts, consistently refers to the sixteen Orders to Produce issued by the New Jersey Superior Court to obtain Mr. Baker's appearance at state court criminal proceedings as "writs of habeas corpus *ad prosequendum*." (*See*, *e.g.*, ECF No. 12-5; ECF No. 17 at 6.)

In *United States v. Mauro*, 436 U.S. 340 (1978), the Supreme Court held that a writ of habeas corpus *ad prosequendum* issued by a federal district court is not a "detainer" for purposes of the IAD although, when preceded by a proper detainer, the writ can serve as a "written request for temporary custody" which, if honored, will trigger the speedy trial and anti-shuttling provisions set forth in IAD Art. IV. *Id.* at 349; *accord Diggs v. Owens*, 833 F.2d 439, 442 (3d Cir. 1987).

In other words, pursuant to *Mauro* and its progeny, a necessary prerequisite to the operation of the IAD is that a "detainer" has actually been lodged by the receiving state with the jurisdiction in which the prisoner is held. *See*, *e.g.*, *United States v. Jones*, 938 F.2d 447, 449 (3d Cir. 1991) (citing *Mauro*, 436 U.S. at 358). "The Supreme Court has emphasized that writs of habeas corpus *ad prosequendum* and detainers are distinct forms of legal process, with different purposes, histories, and effects on prisoners." *Hornick*, 491 F. App'x at 282–83 (citing *Mauro*, 436 U.S. at 357–61).

> Unlike a writ of habeas corpus *ad prosequendum* issued by a . . . court, a detainer may be lodged against a prisoner on the initiative of a prosecutor or law enforcement officer. Rather than requiring the immediate presence of the prisoner, a detainer merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison. Further action must be taken by the receiving State in order to obtain the prisoner. Before it was made clear that a prosecuting authority is not relieved of its obligation to provide a defendant a speedy trial just because he is in custody elsewhere, *see Smith v. Hooey*, [393 U.S. 374 (1969)], detainers were allowed to remain lodged against prisoners for lengthy periods of time, quite often for the duration of a prisoner's sentence.

*Mauro* 436 U.S. at 358–59.

Although the IAD contains no definition of the word "detainer," *see*, *e.g.*, *Mauro* at 358, the Supreme Court has consistently stated that "[a] detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman*, 473 U.S. at 719; *Reed*, 512 U.S. at 342 n. 1; *accord Hill*, 528 U.S. at 112; *Fex v. Michigan*, 507 U.S. 43, 44 (1993). Stated somewhat differently, a detainer is "a legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Bozeman*, 533 U.S. at 148.

By contrast, a writ of habeas corpus *ad prosequendum* directs prison officials to make the prisoner available immediately for court proceedings. *See Mauro*, 436 U.S. at 357–58. Importantly, a court that issues a writ of habeas corpus *ad prosequendum* need not have lodged a detainer in order to secure the presence of the prisoner. *See Hornick*, 491 F. App'x at 282 n. 2.

In light of the foregoing considerations, the New Jersey Supreme Court's finding that the Orders to Produce issued by the state trial court were indeed writs of habeas corpus *ad prosequendum* and were not formal detainers which triggered the IAD, *see Baker*, 966 A.2d at

11

489-90, is not contrary to or an unreasonable application of controlling Supreme Court precedent. Indeed, each of the Orders to Produce by which Mr. Baker was brought before the state trial court was executed by a state court judge and sought to obtain Mr. Baker for contemporaneous court proceedings. Thus, to the extent Mr. Baker's habeas petition seeks relief based on his argument that the "State trial court's abuse of its writs" triggered the protections afforded under IAD Article IV, his claim clearly fails.

Mr. Baker's additional assertion that certain other documents separate and apart from the Orders to Produce demonstrate that the State did in fact lodge a formal detainer against him prior to his January 2006 trial is thornier, particularly where the Appellate Division's 2008 opinion affirming Mr. Baker's conviction expressly noted that "[Mr. Baker] has not marshaled any evidence that would support the conclusion that anything other than the trial court's [Orders to Produce] were ever used to produce him in court in Burlington County, or that any other document was ever 'filed' with the federal authorities to preserve the opportunity to do so in the future." *Baker*, 945 A.2d at 732.

Indeed, Mr. Baker points to several Prosecutor's Certifications in the state court record which suggest that additional transfer-related documents were filed by the State with federal authorities to secure Mr. Baker's presence in state court.[4] Mr. Baker correctly notes that these

---

[4] Mr. Baker also points to two "Release Authorization" forms from the Federal Bureau of Prisons dated December 29, 2004 and October 12, 2005, which are appended to his habeas petition as exhibits. (ECF No. 1 at Exs. 16 and 17.) Although both of these documents indicate that the Bureau of Prisons was producing Mr. Baker to New Jersey officials pursuant to a state writ, the word "Yes" is checked in the "Detainer" portion of each form. (*Id.*)

Mr. Baker does not claim that these Release Authorizations are in and of themselves IAD-triggering detainers; instead, Mr. Baker asserts that these documents lend additional credence to his claim that an IAD-triggering detainer was indeed filed. More specifically, Mr. Baker argues that these documents "prove that the Bureau of Prisons fully grasped the fact that [Mr. Baker] was not only facing charges in another jurisdiction but the very fact that a detainer existed." (Pet'r's Reply 17, ECF No. 17.)

Prosecutor's Certifications also requested temporary custody of Mr. Baker for purposes of securing his attendance at state court proceedings. (*See* ECF No. 12-12.) Each of these Certifications was executed by the representatives from the Burlington County Prosecutor's Office, and not a judicial officer. (*Id.*) Moreover, the last two such Certifications, dated January 5, 2006 and February 2, 2006, indicate that the Prosecutor's request for temporary custody was made "via IAD."[5] (*Id.*) Respondents' answer fails to provide any meaningful explanation

---

These Release Authorizations do not appear to have been included in the state court record produced by Respondents (*see*, *generally*, ECF Nos. 12-1 to 12-42), and appear to have been obtained by Mr. Baker *after* the New Jersey Supreme Court denied Mr. Baker's direct appeal via document requests made to the Bureau of Prisons. (*See* ECF No. 1 at Exs. 6-14.) Ultimately, however, it remains unclear whether these Authorizations were presented to state court, and Respondents' answer is silent on this issue. (*See*, *generally*, ECF No. 12.)

What is clear is that Mr. Baker's IAD-related arguments were resolved by the state court "on the merits." *Simmons v. Beard*, 590 F.3d 223, 232 (3d. Cir. 2009) ("[a] state court decision is an 'adjudication on the merits' [for § 2254(d)'s purposes] where it is 'a decision finally resolving the parties' claims . . . that is based on the substance of the claim advanced") (citations omitted).

As such, to the extent these Release Authorizations were never presented to the state court, it would appear that this Court is now precluded from even considering the import of these documents in resolving Mr. Baker's habeas petition under § 2254(d) review. *See Pinholster*, 563 U.S. at 181 ("review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *Moore v. Sec'y Pennsylvania Dep't of Corr.*, 457 F. App'x 170, 176 (3d Cir. 2012) (in evaluating whether relief under § 2254(d) is appropriate, a federal court is to "limit [its] review to the record that was before the state when it adjudicated the petitioner's claim on the merits").

Respondents have not argued, however, that this Court is precluded from considering these documents under *Pinholster* and its progeny; instead Respondents claim that these Authorizations are simply "administrative order[s] that track[] petitioner's movements while in custody" and have no IAD-triggering implications. (ECF No. 12 at 32). Thus, to the extent these Authorizations were previously presented to the state court and are now properly before this Court for consideration under § 2254(d), they still ultimately fail to provide any basis for this Court to grant habeas relief to Mr. Baker under ADEPA's highly deferential standard; these Authorizations are not IAD triggering "detainers" as the Supreme Court has defined that term and – aside from the word "Yes" being checked in the "Detainer" portion of each form – fail to in any way suggest that a separate IAD-triggering detainer was lodged by New Jersey with the federal government.

[5] The Prosecutor's Certifications executed between November 15, 2004 and September 29, 2005 expressly indicate that the request is made "via State Writ"; the Certifications executed on August 23, 2004 and October 10, 2004 are silent on this issue. (ECF No. 12-12.)

regarding the significance of these Certifications.  (*See* ECF No. 12 at 32 (stating in wholly conclusory fashion that "Petitioner cannot succeed on this argument.").)

While this Court is sympathetic to Mr. Baker's assertion that the import of these seemingly material documents has been ignored by the state courts, ultimately, there is no basis for this Court to construe any of these Certifications as an IAD triggering "detainer" as the Supreme Court has defined that term under *Mauro* and its progeny; indeed, there is no language in those documents by which the State requests that federal detention officials hold Mr. Baker after he finished serving federal his sentence or requesting that federal officials notify the State when the release of Mr. Baker became imminent.

Furthermore, based on other uncontroverted evidence in the state record, it wholly appears that the State did not file a formal detainer with federal authorities until *after* Mr. Baker was sentenced by the state trial court.  (*See* Pet'r's Reply at 23, ECF No. 17 (acknowledging that "[o]nly after [Mr. Baker's] sentencing did the State send the [federal] Bureau of Prisons an actual detainer letter."); *see also* Tr. 7T 129:9-19, ECF No. 12-39 (colloquy between prosecutor and state trial judge explicitly discussing the need for the State to file a detainer with federal authorities and implicitly recognizing that no formal detainer had yet been filed).)

In sum, the record before this Court demonstrates that the state courts properly applied the relevant Supreme Court precedent and found that no IAD-triggering detainer had been lodged by the State.[6]  The state courts' factual basis for this conclusion, recounted above, is entitled to deference and must be "presumed to be correct."  *See* 28 U.S.C. § 2254(e)(1).  Mr.

---

[6] It is for this reason that Mr. Baker's reliance on *Alabama v. Bozeman* is misplaced; in *Bozeman*, it was undisputed that an IAD-triggering "detainer" had been lodged by the receiving state and that IAD Article's IV(e)'s anti-shuttling provision had been violated because the prisoner had been returned to his "original place of imprisonment" before the prisoner county court "trial" was "had."  *Bozeman*, 533 U.S. at 151-52.

Baker can only overcome that deference by showing "by clear and convincing evidence" that this factual determination was unreasonable in light of the available evidence. *Id.* Mr. Baker has failed to provide any such evidence under this standard.

In light of the foregoing, this Court can only conclude that the New Jersey Supreme Court's ruling that the IAD was inapplicable to Mr. Baker because no IAD-triggering detainer had been lodged by the State was neither an unreasonable application of *Mauro* and its progeny, nor an unreasonable application of the facts before it. Mr. Baker is therefore not entitled to habeas relief.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Because all of Mr. Baker's claims are either without merit or are otherwise insufficient to warrant habeas relief, Mr. Baker has failed to make a substantial showing of the denial of a constitutional right. As such, and because jurists of reason could not disagree with this Court's denial of Mr. Baker's habeas petition, Mr. Baker's claims are inadequate to deserve encouragement to proceed further and Mr. Baker is denied a certificate of appealability.

## IV. CONCLUSION

For the reasons stated above, Mr. Baker's petition for a writ of habeas corpus (ECF No. 1) is DENIED and Mr. Baker is DENIED a certificate of appealability. An appropriate order follows.

Dated: February 5, 2018

s/Robert B. Kugler
ROBERT B. KUGLER,
United States District Judge